IN THE UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| **CINDY BUTTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| **MCINTOSH COUNTY BOARD OF** | ) |
| **ASSESSORS, TOM GORE,** Chairman, | ) |
| **CHARLES CREWS,** Vice Chairman | ) |
| **RONALD WILLIAMS, JOHN** | ) |
| **VERNON, EUNICE MOORE,** each in his/her | ) |
| individual capacities, | ) |
| **KEITH A. PAYNE,** Chief Appraiser in | ) |
| his individual capacity, **SHIRLEY WHITE,** | ) |
| Deputy Chief Appraiser, in her individual | ) |
| capacity. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** PLAINTIFF CINDY F. BUTTON and files this action under the Georgia Whistleblower Act ("GWA") and pursuant to 42 U.S.C. § 1983 regarding Defendants' violation of her rights under the First and Fourteenth Amendments and shows the Court the following:

INTRODUCTION

To succeed on a claim under the GWA, a public employee must establish "that (1) [she] was employed by a public employer; (2) [she] made a protected disclosure or objection; (3) [she] suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action." (Citations omitted.) *Baptiste v. Mann*, 360 Ga. App. 345, 348 (2021). In our Plaintiff's case, she was an employee of the McIntosh County Board of Assessors, she witnessed coercive management decisions, with some

amounting to illegal acts, and reported what she knew to her direct supervisor and the county manager. Her direct supervisor, Chief Appraiser Keith Payne, imposed several adverse employment actions on Ms. Button during her employment as he was confronted with each bit of information he learned that involved Ms. Button and how her protected activity threatened his way of managing the tax assessor's office.

    Payne had established his influence and power within the tax assessor's office by coercing employees to engage in writing statements against one another. He discouraged positive communication between employees, and he used others in leadership positions to implement his retaliatory acts. Retaliation on employees who engage in protected behavior is not necessary unless you want to protect your own power and control. Payne knew if the County Board of Commissioners found out how he behaved, he would have been stripped of his position. Payne didn't want that because it is his position that provides him with the power to engage in the tyrannical behavior to which he has grown accustomed. Evidence exists to show that the members of the Board of Assessors were not a threat to Payne's position and have protected and justified Payne's behavior.

    Defendant Payne's is a liability for the county. When Ms. Button let the county know what was going on, the board of assessors did not address the liability, but chose to deny and protect him. For these reasons, Keith Payne and Shirley White, as the management and leadership within the tax assessor's office, and the members of the Board of Tax Assessors should be held liable for the adverse actions cast upon Ms. Button for choosing not to "go along to get along."  She stood up to management at the risk of the adverse employment actions that were taken against her. Had she not gone to the county manager, the McIntosh County Board of Commissioners would not have known how desperate their constituents are for a properly run tax

assessor's office. To date and upon information and belief, the assessors and the leadership at the assessor's office are all still in their positions despite a legal action currently filed against the Board of Assessors by the county Board of Commissioners trying to remove them.

## FACTUAL ALLEGATIONS

1. Plaintiff Cindy F. Button ("Ms. Button") is a resident of Riceboro, Georgia in Liberty County, Georgia.

2. Ms. Button was a public employee for the purposes of the GWA when she was employed by the McIntosh County Board of Commissioners in 2021 and supervised under the McIntosh County Board of Assessors and the Chief Appraiser at that time.

3. The conduct which gives rise to the state and federal actions herein took place in McIntosh County, Georgia, which is in the Southern District of Georgia, Brunswick Division.

4. The United States District Court has subject matter jurisdiction under 28 U.S.C. § 1331.

4. Ms. Button began working in the office of the McIntosh County Board of Assessors and under Defendant Keith Payne's supervision on February 1, 2021 as a front office administrator and appraiser trainee.

5. Under Defendant Payne's supervision were Appraisers: Shirley White, Melissa Williams, Daniel Hawthorne, Lisa West, Shawna West, and office administrators, Judy Lohman, and Cindy Button.

6. After Ms. Button began working for the Board, she became concerned with the manner in which Defendant Payne was managing the Assessor's office.

7. Ms. Button quickly learned that when Defendant Payne had an issue with an employee, he coerced other employees to write statements against the targeted employee.

8. Shortly after starting in the assessor's office, Ms. Button was asked to write a negative statement about Ms. Williams by management.

9. Ms. Button knew that if she created a conflict by refusing to write a statement about the targeted employee, then she would be become the target.

10. With that knowledge, Ms. Button wrote a statement against Ms. Williams for reasons that she did not wholeheartedly believe deserved a statement to be written, but she felt forced to think of something to write.

11. Around May of 2021, Mr. Hawthorne placed a toy on Defendant Payne's desk as a humorous gesture, however, it did not go over so well with Defendant Payne.

12. As a result, Defendant Payne asked Ms. Button and another employee to write statements about Mr. Hawthorne despite most or all of the employees having knowledge about the toy left on Payne's desk.

13. Deputy Chief Appraiser, Shirley White was present during the request and had firsthand knowledge of the incident mentioned above, as did every other employee in the office; however, she nor anyone else was asked by Defendant Payne to write a statement describing what she knew about Hawthorne and the toy that was placed on Payne's desk.

14. Ms. Button very reluctantly wrote a statement for Defendant Payne about what Mr. Hawthorne had done because she was afraid if she refused altogether, she would be fired or have statements written against her.

15. Around this same time, Defendant Payne, with Lisa West present, discovered that Ms. Button lived very close to the county manager and made statements to Ms. Button letting her know that he knew, and that she did not need her job if she had the money to live next to the county manager.

16. When he discovered where Ms. Button lived, Defendant Payne also discovered that Ms. Button had a means, by the close proximity between the homes of Ms. Button and Mr. Zoucks, the county manager, to get information to the Board of County Commissioners about the unlawful, coercive, and retaliatory acts within the tax assessor's office.

17. Around the same time as the "toy incident," Payne, with Shirley White's support, was making notes to write up Danny Hawthorne and asked Ms. Button if Mr. Hawthorne had ever sexually harassed her.

18. Upon information and belief, Payne was attempting to include a sexual harassment claim against Hawthorne, but Ms. Button refused to make that claim for him.

19. After declining to join Payne in the accusation that Mr. Hawthorne had sexually harassed her, Ms. Button noticed that Payne began to treat her differently by ignoring her, among other things.

20. During her employment, former co-worker, Ms. Melissa Williams, stated in an affidavit included in the Board of County Commissioners suit against the Board of Assessors, that she "observed what I consider to be a blatant disregard of uniformity against a taxpayer. The Taxpayer, James H. Manning, the owner of Parcel Number 0040 0001 inquired about the ownership of certain items listed on the digest. As a result, the Chief Appraiser Keith Payne instructed staff to review the assessed property. The values that he instructed staff to add had never been affixed to campgrounds before. When I confronted him with that fact, he replied "we do now"; I addressed the issue that no other campground in McIntosh County had this valuation and it needed to be changed or corrected on multiple occasions." [1]

---

[1] See Exhibit A. This exhibit contains a petition (SUV2021000124) by the McIntosh County Board of Commissioners to the Superior Court for guidance in its attempt to remove the members of the Board of Assessors. The petition contains as exhibits affidavits from Plaintiff Cindy Button, Melissa Williams, and county manager, Patrick Zoucks, among other items.

21. Ms. Williams described "difficult working conditions, with the supervisors, including Chief Appraiser Keith Payne, making conditions difficult by creating conflict between various employees, and instructing employees to avoid speaking with each other[.]"

22. After Ms. Williams resigned from her position at the tax assessor's office in June, Ms. Button asked Defendant Payne about moving her from an appraiser trainee, as she was titled at the time of hiring and described on the agency's website, to an appraiser, but Defendant Payne denied that he had hired her as an appraiser trainee. Ms. Button later noticed that the website had been changed and her second title was removed.

23. In July of 2021, Ms. Button injured herself as she exited the workplace, and while she was down and despite being present immediately after the fall, Payne failed to assist Ms. Button in getting up, then, against the law as codified in Georgia's Workers' Compensation Act, told her that her work injury would not be covered by workers' compensation, and she was to report to work the following day.

24. Ms. Button's injury at the workplace required medical treatment and doctor appointments.

25. It was later discovered that her absences related to the work injury were proffered as a reason to terminate her in late August of 2021.

26. Ms. Button was not informed by the county about her eligibility for workers' compensation benefits, how to get treatment, or any procedures for addressing an injury at work.

27. To date, Ms. Button's treatment related to the work injuries has not been paid, and a separate claim is pending under Georgia's Workers' Compensation Act.

28. Mr. Hawthorne explained to Ms. Button that in or around the month August of 2021, Mr. Hawthorne had an encounter with a customer who was covid positive, and Defendant Payne

ordered Mr. Hawthorne to continue to come to work but had him quarantine in the hot, county car for at least two days.

29. On or about August 12, 2021, Ms. Button was unexpectedly confronted by management with a performance evaluation.

30. Despite having nothing negative on her employment record and positive comments on her evaluation that contradicted the scores, she was rated poorly in some areas of her performance.

31. When confronted with questions about the poor ratings, Lisa West, Shirley White nor Payne would provide an explanation, each disowning the statements made about Ms. Button in the evaluation.

32. On or about August 12, Ms. Button went to the county manager's home and reported to him everything she witnessed about the mismanagement within the McIntosh County Tax Assessor's office that concerned her.

33. Ms. Button attempted to speak to a member of the Board of Assessors about the mismanagement she had witnessed and how it was affecting her employment but was ignored.

34. Ms. Button warned the county manager that she feared she would be fired for reporting the information to him, but he assured her that would not happen.

35. On or about August 18, 2021, and after conducting an investigation himself into Ms. Button's concerns, the county attorney communicated to the Chairman of the McIntosh County Board of Assessors the information that had been shared by Ms. Button and previous employees and recommended the Board of Assessors investigate the reports.

36. Adam Poppell, county attorney, did not receive a response from this communication, so on or about August 30, 2021, the county manager called the Chair of the Board of Assessors. Mr.

Gore claimed not to have received the first written communication, so Mr. Zoucks, county manager, sent the written communication by email once again.

37. On or about August 30, 2021 at 8:15 a.m., Ms. Button was sent home from work and told she was suspended for speaking to her seven year old son on the phone in an attempt to assist him with logging on to his computer as he was at home participating in virtual school as a result of covid restrictions.

38. Later that same day, Lisa West contacted Ms. Button by phone and told her she was terminated as of August 30, 2021.

39. On or about September 1, 2021, the county attorney was informed by the Vice-Chair of the Board of Assessor's that the allegations conveyed by Mr. Zoucks and Mr. Poppell to Chair Gore were "nothing more than disgruntled employees complaining about 'nothing.'"

40. Ms. Button promptly and properly delivered a notice of appeal regarding her termination to the Board of Assessors, and it was ignored.

41. On or about October 11, 2021, through counsel, Ms. Button served the county attorney and Mr. Gore with an ante litem notice regarding wasteful, retaliatory, defamatory, and abusive conduct on behalf of the leadership at the McIntosh County Board of Assessors office.

42. Upon information and belief at the time of drafting this complaint, the McIntosh County Board of Commissioners is engaged in litigation to remove the members of the McIntosh County Board of Assessors based on the information discovered as a result of Ms. Button's initial complaints.[2]

---

[2] Exhibit A and its exhibits make up the complete petition filed by the McIntosh County Board of Commissioners, and Exhibit B is an order granted by the Superior Court of McIntosh County denying the Board of Assessors' Motion to Dismiss that petition.

43. Upon information and belief, there are past and present employees who are not willing to offer information about the activities within the office of the tax assessor for fear of retaliation by its current management and the Board of Assessors.

## COUNT I
### RETALIATION UNDER O.C.G.A. § 45-01-04
### ADVERSE ACTION – PLAINTIFF WAS STRIPPED OF HER SECOND TITLE AND DENIED AN OPPORTUNITY FOR ADVANCEMENT BECAUSE SHE REFUSED TO ENGAGE IN AN UNLAWFUL ACT AT THE DIRECTION OF DEFENDANT PAYNE

44. All of the foregoing allegations are incorporated herein.

45. As stated in the foregoing allegations, Chief Appraiser Keith Payne was known by his employees for having them write statements against one another as a form of retaliation for whatever and to whomever he decided he would retaliate.

46. Upon information and belief, Shirley White was aware of Payne's unlawful practices and was in support of his decisions and behavior.

47. After Ms. Button refused to accuse a co-worker of sexual harassment at Payne's direction and Payne made it obvious to Ms. Button (and others who were present) that he knew Ms. Button was the county manager's neighbor, he stripped her of her second title as an appraiser trainee.

48. When the Board of Assessor's learned about all of the incidences Ms. Button complained of to the county, they refused to act and supported the adverse employment actions enforced by Payne.

49. Stripping an employee's title and disposing of a previously promised opportunity for advancement amount to a serious and material change in terms, conditions or privileges of employment and would dissuade a reasonable employee from engaging in similar protected activity at the risk of facing the same retaliation.

50. When Ms. Button inquired as to why she no longer would be an appraiser trainee, she was simply told she never was.

51. A reasonable employer would not engage in this behavior.

52. The taxpayers and Ms. Button were harmed as a result of the Defendants violation of the GWA, and Ms. Button seeks relief for that harm.

COUNT II
RETALIATION UNDER O.C.G.A. § 45-01-04
ADVERSE ACTION – PLAINTIFF RECEIVED POOR REMARKS ON HER
PERFORMANCE EVALUATION

53. All of the foregoing allegations are incorporated herein.

54. Ms. Button receive poor comments on her performance evaluation by management after she reported to the Chief Appraiser that she would not falsely accuse a fellow employee of sexual harassment in a written statement as directed by Payne.

55. A baseless poor performance evaluation of an employee is a serious and material change in terms, conditions or privileges of employment and would dissuade a reasonable employee from engaging in similar protected activity at the risk of facing the same retaliation.

56. The proffered reason for this adverse employment action was that Ms. Button offered poor customer service; however, the real reason was because she would not follow the unlawful order of her superior, and he found out that she is the county manager's neighbor which would give her easy access to share the unlawful orders she is experiencing and witnessing at the office.

57. The poor remarks on her performance evaluation amount to retaliation for refusing Payne's order to report sexual harassment of a co-worker and intimidate her from sharing this information to the county manager.

58. The Board of Assessors learned of these allegations and chose to support Payne's actions.

59. The taxpayers and Ms. Button were harmed as a result of the Defendants violation of the GWA, and Ms. Button seeks relief for that harm.

## COUNT III
## RETALIATION UNDER O.C.G.A. § 45-01-04
### ADVERSE ACTION – PLAINTIFF WAS SUSPENDED FROM HER POSITION BY THE MANAGEMENT IN THE MCINTOSH COUNTY TAX ASSESSOR'S OFFICE

60. All of the foregoing allegations are incorporated herein.

61. Ms. Button was suspended from her position after management found out that she had spoken to the county manager about her concerns regarding the assessor's office and the unlawful management under Defendant Payne, and the county manager had informed the Board of Assessors.

62. The Board of Assessors supported Payne's actions.

63. An employee's suspension is a serious and material change in terms, conditions or privileges of employment and would dissuade a reasonable employee from engaging in similar protected activity at the risk of facing the same retaliation.

64. The proffered reason for this adverse employment action was that Ms. Button was conducting personal business on the job; however, retaliation for complaining to the county manager was the real reason.

65. The taxpayers and Ms. Button were harmed as a result of the Defendants violation of the GWA, and Ms. Button seeks relief for that harm.

## COUNT IV
## RETALIATION UNDER O.C.G.A. § 45-01-04
### ADVERSE ACTION - PLAINTIFF WAS TERMINATED FROM HER POSITION BY THE MANAGEMENT

66. All of the foregoing allegations are incorporated herein.

67. Ms. Button term's suspension turned into her termination by the management, at Payne's direction, once he discovered that Button's disclosure to the county manager quickly led to the discovery of additional unlawful behavior by Payne.

68. An employee's termination is a serious and material change in terms, conditions or privileges of employment and would dissuade a reasonable employee from engaging in similar protected activity at the risk of facing the same retaliation.

69. The proffered reason for this adverse employment action was false and retaliation for the employee's statements to the county manager which triggered an investigation uncovering illegal activity in the office of the county assessors was the real reason.

70. Shirley White also proffered that Ms. Button's absences due to her work injury contributed to her termination.

71. The Board of Assessors has chosen to support the Board of Assessor's office and its leadership despite being aware of the allegations against Button.

72. The taxpayers and Ms. Button were harmed as a result of the Defendants violation of the GWA, and Ms. Button seeks relief for that harm.

### COUNT V
### RETALIATION UNDER O.C.G.A. § 45-01-04
### ADVERSE ACTION - PLAINTIFF WAS DENIED THE RIGHT TO AN APPEAL OF HER TERMINATION

73. All of the foregoing allegations are incorporated herein.

74. Ms. Button was denied her right to an appeal of her termination as a county employee by the board of assessors and the leadership within the tax assessor's office because they knew that Ms. Button's protected activity led to an inquiry into the mismanagement of the McIntosh County Tax Assessor's Office (and eventually a suit to remove the assessors).

75.     Denying an employee's timely, proper right to an appeal of her termination by ignoring it is a serious and material change in terms, conditions or privileges of employment and would dissuade a reasonable employee from engaging in similar protected activity at the risk of facing the same retaliation.

76.     Upon information and belief at the time of filing, there was no proffered reason for this adverse action by the employer.

77.     The taxpayers and Ms. Button were harmed as a result of the Defendants violation of the GWA, and Ms. Button seeks relief for that harm

## COUNT VI
### PURSUANT TO 42 U.S.C. § 1983, DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE SPEECH

78.     All of the foregoing allegations are incorporated herein.

79.     Ms. Button exercised protected speech when she went to the county manager's home and explained to him all of the ways that the Chief and Deputy Chief Tax Appraisers (with the protection and support of the members of the board of tax assessors) were managing the tax assessor's office, including but not limited to unlawful behavior on their parts.

80.     Ms. Button complained to the county manager about the serious mismanagement within the tax assessor's office.

81.     It was not within Ms. Button's job duties to report to the county manager any information or concerns she had about how her employer conducted business.

82.     Ms. Button's complaints led to the discovery of the severity of the inefficiencies that resulted from the mismanagement of the Board of Assessors and tax assessor's office.

83. The negative impact on taxpayers discovered as a result of Ms. Button's protected speech caused the Board of Commissioners to take drastic action to begin trying to remove the members of the McIntosh County Board of Assessors from their positions.

84. The information Ms. Button shared with the county manager involves the integrity of the services provided by the tax assessor's office and the entire county government, not just her position as an employee.

85. Ms. Button was harmed by the McIntosh County Board of Assessors, the members of the board, and the Chief and Deputy Chief Appraisers in McIntosh County and seeks relief for that harm.

## COUNT VII
### PURSUANT TO 42 U.S.C. § 1983, THE BOARD OF TAX ASSESSORS AND ITS MEMBERS VIOLATED THE PROCEDURAL AND SUBSTANTIVE FOURTEENTH AMENDMENT DUE PROCESS RIGHTS OF THE PLAINTIFF

86. All of the foregoing allegations are incorporated herein.

87. The members of the board of assessors and the Defendants Payne and White were acting under the color of state law when, pursuant to 42 U.S.C § 1983, they violated Ms. Button's fourteenth amendment right to due process.

88. Ms. Button's employment with the McIntosh County Board of Tax Assessors was terminated after Defendant Payne learned of her disclosure to the county manager of protected speech, in violation of her first amendment right to free speech.

89. The disclosure of information by Ms. Button led to an investigation of all of the defendants, after which unlawful acts by the leadership and steps to protect those acts by the board and its members were discovered.

90. Ms. Button filed an appeal of the termination but was ignored by the Board of Assessors, and a review or hearing was never conducted as allowed by the local ordinances.

91. As a result of the violation, Ms. Button was deprived of her protected property interest that was created in her position when the local ordinance provides her the opportunity to appeal a termination, that appeal was ignored, and it was Ms. Button's protected speech that related to a public interest which resulted in that termination for which the appeal was ignored.

92. Ms. Button was harmed as a result of the termination and seeks relief under § 1983.

93. Exhibits A and B are incorporated herein as a part of this complaint.

WHEREFORE, PLAINTIFF DEMANDS A JURY AND THAT THIS HONORABLE COURT PROVIDE THE FOLLOWING RELIEF:

a) Injunction restraining continued violation of the GWA;

b) Reinstatement of the employee to same position held before retaliation or equivalent position;

c) Reinstatement of full fringe benefits and seniority rights;

d) Compensation for lost wages, benefits, and other renumeration;

e) Any other compensatory damages allowable at law;

f) Reasonable attorney fees, court costs, and expenses; and

g) Any other relief allowable by state or federal law at the discretion of the Court.

Respectfully submitted this 18th day of July, 2022.

BALBO & GREGG, ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff

By: _____
Elizabeth Carlisle Beasley, Esquire
Georgia Bar No: 567510

P.O. Box 1297
Richmond Hill, Georgia 31324
Telephone:(912) 459-1776
Facsimile: (912) 459-1777
email:  betsey@balbogregg.com